We turn now to the second case of the day, Appeal No. 25-2605, Estate of Cooper, et al. v. Milwaukee County, et al. Good morning. We have here Mr. Andriusis. Yes, good morning, Mr. Andriusis. Yes, thank you. May I please the court opposing counsel? My name is Julius Andriusis. I represent Barbara Estate, Barbara Thomas, and Miracle Thomas. Judge Grishbach granted 12C motion because he said there is no plausible inference that both officers, Thomas Durant and Leon Martin, Martin's behavior raised to the level that would shock the consciousness or that would demonstrate harm, that his mental state was intended to harm this innocent bystander, Teion Cooper, who was driving on that day on his own business with his little girl, Miracle, and also his fiancée. I disagree with that. We disagree, and that's why we filed this appeal. As you saw the complaint, we really put a lot of effort preparing and putting quite detailed complaint. We included even a live link to the chase. And while I agree that the Lewis and Cremento v. Lewis case is controlling on this case, we disagree that it did not, this level of officers, of both officers' actions on that day did not demonstrate deliberate indifference. I do see that you put a lot of effort into the complaint, and so I wanted to hone in on the subjective intent part and wondering if you can point me to the part of your complaint that would allow me to conclude that the detectives harbored a subjective intent to cause harm to Mr. Alexander or that their actions were unrelated to a legitimate government interest. Yes, a few points in the complaint. I would not be able to point maybe exactly paragraphs right now, but I would, from my memory, what we left in the complaint. This violation of Javan Alejandro, who passed the intersection, it's not even clear what law he violated. It's not from that body camera, from that squad camera. He just passed through the intersection. It was a green light, not a red light. And it's true that we can see briefly he went to that distress lane, but we do not see from the squad camera how he passed. He went to the green light, and when the officers finally turned around, made this U-turn, we did not see him in distress lane. We could see his car for a brief moment, but he was in the first lane. So it's not even clear for what they start chasing him. We said at the best it would be a municipal violation, but it's not even clear, and he did not get any kind of tickets or charges related with this passing intersection. What Javan Alejandro was charged later with, a fleeing officer, vehicular homicide, and he pled to those and get 20 years in prison for those. So counsel, let's assume hypothetically that the record is clear that he drove past a red light. I know that's not what happened, but let's just assume. And so the officers saw this. The officers turned on their lights, and then the person, it could be just Joe Smith, who ran the red light, starts going really fast down a residential street. What do you think the officers should do? We should look at the officer's intent, correct? Well, then what if the officers say, my intent was to try to stop him? But I attached the Milwaukee Police Department chase policy, and they have to weight public safety versus public benefit in these type of chases. They went to two school zones that was 20 miles per hour. Right after this intersection, there's a school zone. A little bit further, another school zone. There's a church. There's a daycare. It's a very highly populated area. They went through two red lights at the speeds over 50 miles per hour, which if the car was right there, he wouldn't be able to stop. To stop a cruiser, to stop a police cruiser, it's a very heavy metal car, to stop a police cruiser at about 93 miles per hour. So your answer is that if the officer assesses the situation and thinks that it's unreasonable or it would be unsafe to chase the person, that the officer shouldn't chase the person? He should terminate. After he saw the school zone, after he passed through one red light, he probably understood this is a nutcase. I should not put other people in risk. I can't be driving. He drove through one red light, another red light, two school zones, church, daycare, full of people, houses. It's a busy hour. He should have stopped. Would the test be the same if, for example, instead of running a red light, let's say the person fleeing just robbed a bank at gunpoint? Does that matter or no? I think it would matter. So my question really is, what do you think is the standard that officers should follow? You're saying we should consider the type of crime, we should consider the type of neighborhood. What other things should the officer consider? I think type of crime would be important. If there's a felony, like a bank robbery, there's a homicide, something like a felony-level felony, maybe even misdemeanor. Officer, okay, this is, I'm trying to chase a murderer, some kind of, yes, then maybe it's worthy. But how does, I guess, because we're focusing on the officer's intent to potentially harm third parties, right? Yes. And so how does the seriousness of the crime, how is that relevant to that inquiry, to the inquiry about whether or not the officers were deliberately indifferent to the bystanders? Because to the bystanders, it doesn't matter whether the person in the car had committed a bank robbery or whether the person in the car just ran a red light. And so I'm trying to figure out exactly kind of what test, what you think the officer should consider. I would like to leave maybe a few seconds for my rebuttal, but I think through the training, through the classes, it's a balancing test. I think it should be considered in every different situation. It's very important to, it's a crime, high-level crime. They should, I think it's a discussion of the officer. He should make it. This is a very important crime. In 2025, nine people were killed in Milwaukee alone. Nine people were killed due to police chases, including one mother with two kids that were driving from the soccer. She was taking two kids from the soccer, mother 50 years old, two kids, 16 and 21. Police officer also was chasing a car, red lights, same type of situations. Boom, three, mother and two kids got killed. Two other was injured in that car. Nine people got killed in 2025 due to those police chases. I just would like to bring one more time before I run out of my time. I'm sure you looked at this link of this chase. A police officer, when he was driving towards that intersection, he was speeding. It was a school zone as well because it was a school zone right there. He came to a school zone. It was 20 miles. He was going up to 38 miles. So he was violating law. He did not stop at that intersection. If you look at this camera, he could not stop. He was going so fast that he did not stop where it's supposed. So if mother with two kids was walking on that intersection where he stopped, he would have heard them. Maybe he would have killed them. That's before this chase started. So this case is more similar to Flores v. Gourney, Officer Gourney. This officer started to chase this. Well, he responded to this non-emergency, and he went to the red light at 78 miles per hour, and he killed this lady. And this case, Flores v. Gourney, was decided after post by this court, after Lewis v. Sacramento, Sacramento v. Lewis. And court found that officer demonstrated deliberate indifference. In this case, also, you should look, and this officer was known to drive fast, to drive fast. I mean, it's fun to drive fast, especially car like cruiser, eight-cylinder, big car, piece of metal. It's fun. It's like flying F-16. Wow, fast. Maybe it's a boring day for the cops, and they saw this thing going, go, let's chase it. Let's go over 100 miles per hour. So this officer violated at least three laws. He was going, he was speeding 38 miles in the school zone when he's coming. He did not stop where he was supposed to stop. He almost blew the red light. And if people were walking, he would have killed them or injured them. Well, then he would be deliberate injustice. If he would injure people before this chase started, we have three instances that the officer violated laws. I think it demonstrates that he had deliberate injustice. I would like to leave 14 seconds for rebuttal. Thank you, Mr. Odrousos.  Ms. Zellner, we welcome you to the podium. May it please the court, Kylie Zellner for defendant appellees, Milwaukee County, Deputy Durand, and Deputy Martin. This case involves a tragic death caused by Javon Alexander, a fleeing driver who ran a stop sign after refusing to stop for law enforcement. But this appeal is not about whether the pursuit was wise, whether it complied with local policy, or whether plaintiffs may have state law negligence claims. The only federal question is whether the complaint plausibly alleges a substantive due process violation under County of Sacramento v. Lewis. It does not. Lewis controls high-speed pursuit cases. It holds that deliberate indifference or recklessness is not enough. In this context, substantive due process liability exists only where officers act with a purpose to cause harm unrelated to a legitimate object of arrest. The complaint alleges no such purpose. It alleges that the deputies pursued a fleeing vehicle for approximately... Well, there's an or there. There's an or in Lewis. It's that officers intended to cause the harm or their pursuit shocked the conscience. Do you agree or disagree? I do agree. Okay. So, I know we're on a motion for judgment on the pleadings. I understand that. But let me just ask you anyway, why would it be such a stretch of an imagination to think that a jury, you know, had this been able to go forward, might not think that speeding through two school zones, past a daycare, and past a church, during rush hour, to pursue someone who committed a traffic violation doesn't shock the conscience? So, just dealing with that second part of the or. Correct. I think that the issue there is that County of Sacramento versus Lewis involves similar speeds, similar driving through a residential area. And the court there defined shocks the consciousness in that respect to an intent to cause harm. And so, I think the issue there is that a jury may find that those speeds are inappropriate, reckless, deliberate indifference. But the way that the court in County of Sacramento versus Lewis defined it really was to say that what shocks the conscience would be an intent to cause harm. So, I think that in a high-speed pursuit situation, I don't think that there is a distinction between an intent to cause harm and shocks the conscience. But you disagreed with me. The case has an or. Correct. And so, I guess there the issue would be that if there was an or, the plaintiffs in this case have pointed to no Seventh Circuit or Supreme Court cases that would suggest that the conduct here would qualify as the or. And so, I think qualified immunity then would apply in this case. Plaintiff's primary appellate response is to try to distinguish Lewis because the victims here were innocent third parties rather than a fleeing suspect. But Lewis standard is not based on forfeiture by the suspect. It is based on the realities of a rapidly evolving police pursuit and the constitutional requirement that executive action shocks the conscience. The question remains the officer's culpable state of mind. And the complaint still lacks plausible alleging an intent to injure anyone for reasons unrelated to legitimate law enforcement objectives. Moreover, this court addressed that very distinction in Flynn where the court was addressing an issue with an innocent bystander that was injured in that case. A couple of the issues that came up during the oral argument in Flynn that I think were again addressed here by the court was sort of this distinction between a minor traffic offense, a municipal citation, or something more serious like a bank robber. And I think one of the important things that the court pointed out there is that once this car takes off from law enforcement's request for them to stop, they do become a felon. That fleeing from law enforcement is a felony at that point. So plaintiffs attempt to suggest that this was just a municipal citation or there was no clear reason why he was being stopped. Once he decides to run from the police, he becomes engaged in felony conduct at that point. Plaintiffs also attempted in their briefing to rely on theories of racial profiling. They used the words getting even or even teaching the suspect a lesson. I think the important thing here is that those arguments were not presented meaningfully below. They were not part of the complaint in this case, and so they should at least be waived. The complaint's passing reference to Alexander's race and general familiarity with law enforcement history does not in any way allege that these deputies were racially profiling him, that they pursued him because of race, or that they intended to punish him. The same is true regarding plaintiff's new argument on appeal about whether the pursuit terminated voluntarily or involuntarily. Plaintiffs spent a significant amount of time distinguishing that. In paragraph 24 of their complaint, they in fact allege that the pursuit was terminated after the crash. And in any event, the distinction does not change the Lewis analysis. Whether the pursuit ended voluntarily or through a crash, the constitutional question remains whether the deputies acted with a purpose to cause harm unrelated to arrest. The complaint does not plausibly allege anything to that effect. Flynn also contained a discussion regarding a supervisor contemplating whether or not to end the pursuit. But the court in that case again said that it would remain an emergency situation subject to the Lewis requirements. Qualified immunity would provide a second independent basis to affirm. Plaintiffs have not identified a Supreme Court or Seventh Circuit case clearly establishing that a brief pursuit of a Flynn driver, even a dangerous pursuit through a residential area, violates substantive due process absent an attempt to harm. To the contrary, Lewis and Seventh Circuit authority, like Flynn, point the other way. Policy violations and state law negligence principles do not clearly establish a federal constitutional right. The Monell claim also fails here. Without an underlying constitutional violation by the deputies, there can be no municipal liability. And the complaint's failure to train and failure to supervise allegations are conclusory in any event. Finally, plaintiffs did not file a reply brief in this case. That matters because the defendant's appellate brief did identify multiple waiver and preservation problems in this case. The new racial profiling theory, the get-even theory, the voluntary versus involuntary termination theory, the request to amend on appeal, and the discovery argument. Plaintiffs had the opportunity to answer those questions, and they did not. And for that reason, the district court's judgment should be affirmed in this case. All right. Thank you, Ms. Zeller. And Mr. Andrus, we can give you one minute. One minute. Thank you. I would like, of course I disagree with counsel's arguments. I think officers' behavior, officers' demonstrated deliberate indifference in this case, and that would amount to shocking the consciousness of the people. I also would like to tell that officers did not really terminate this chase as indicated, as Judge Griesbach indicated, officers terminated before the accident occurred. I can't even understand how these officers could not take a simple turn. They crashed a car. Maybe since we did not have a chance to do discovery, maybe these officers, I'm sorry, maybe, I don't know how you're going to take it, but something going on. They were going fast. They were going, having this chase, and they cannot make even a simple turn. It was a simple turn. They crashed a car, and some innocent bystanders, they did not terminate this chase. And Jawan Alexander, of course, he didn't know, didn't see that. He was just fleeing through the street without knowing that officers crashed their car. I mean that questions officers' training, how they cannot, how on a regular day, about 30 miles per hour, they cannot make a simple turn. Have they been trained to drive these cruisers? Do they know how to drive these cruisers? That's something that calls into question. Were they high? I don't know, but something is wrong. They were fleeing on that street, speeding, could not stop at the red light. It's a lot of questions here, judges, that I think should be left turned back. We should fulfill to do all discovery. I should be able to depose Officer Durant, Officer Leon, the county employees, what kind of training they received that they were there. The urine or blood test was taken after this accident, find out everything. And then, if this case qualifies for summary judgment motion, maybe then this could be revisited. But it's too early. It's unfair for this family, for this man that was driving on this day with his wife and this little girl, Miracle, who miraculously was not even injured in this case. He was taken to the emergency room, but she survived. And I'm asking this court to overturn this Judge Grishbach decision. Very well. We understand the arguments of both parties, and we thank you. We'll take the case under advisement.